## Pennsylvania Water and Power Company, Appellant, *v.* Reigart.

Argued March 9, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Frederick B. Gerber,* for appellant.

*George Hay Kain,* with him *Amos W. Herrmann,* for appellee.

OPINION BY PARKER, J., July 15, 1937:

This appeal is presented to us for a determination of the rights of a grantee in a written grant of a right of way for the construction and maintenance of lines used in the transmission of electric current where the written contract did not precisely fix the location or extent of the land to be occupied. Pennsylvania Water and Power Company, as successor to the original grantee, filed a bill asking for an injunction to restrain Mathias Reigart, a land owner, from interfering with it in constructing lightning arresters for the protection of the power lines which it had installed at a former time. A preliminary injunction was granted and this permitted the plaintiff to complete the installation of the lightning arresters, but on final hearing the bill was dismissed and the plaintiff was refused relief. The power company has appealed from the final decree. The defendant in its answer also asked for relief. The order dismissing the bill provided that "the prayer that the defendant be awarded damages is refused without prejudice to his rights to pursue appropriate legal remedies." The defendant has not appealed.

On April 13, 1923, defendant's predecessor in title, the owner of about twenty-nine acres of land, granted to plaintiff's predecessor, his heirs and assigns, "a free and uninterrupted right of way on, over and through" said land "for the purpose of constructing, maintaining, and operating on said right of way a line or lines for the transmission of electric current, as well as tele-

phone and telegraph lines; together with all necessary towers, structures, poles, hangers, wires, cables, attachments and other appliances. The said right of way to be located by engineers of said grantee, his heirs and assigns." The grant included a right of entry on the premises for the purpose of constructing, maintaining, and operating the lines, the right to cut or trim trees and underbrush on the way, and the right to build from time to time "on said right of way, such additional transmission, telephone and telegraph lines as they may wish and determine." The number of towers to be erected on the property was limited to one, to be located as shown by a blue print attached to the deed. That blue print also showed in a general way the center line of the proposed right of way. The grantee undertook to pay all damages to crops or fences resulting from either construction or repairs.

After the grant the original grantor conveyed about three acres of the entire property to the defendant and, as we understand it, the tower is located on the three acres.

Shortly after the right of way was granted, the plaintiff entered on the land and installed power lines including one tower and has since been maintaining the same facilities. The towers are of steel supported by four legs on concrete foundations, are approximately ninety-six feet in height, and are twenty feet square at the base so that the tower at its widest point is ten feet on each side of the center line. About sixty feet from the ground there were placed three cross arms having a spread of twenty-seven feet, or thirteen and one-half feet on each side of the center line. No telephone or telegraph lines have been installed.

The transmission of current was frequently interrupted by reason of the lines being struck with lightning and this occurred so often and to such an extent that there was an interference with the delivery of cur-

rent. In 1935 the plaintiff undertook, in accord with well established scientific principles, to install lightning arresters consisting of two pairs of wires. The legs of the towers were connected to the legs of the next adjoining towers on each side by a light wire buried about twenty inches under the ground and on each side of the center line. The wires extended between the towers by a curve in the form of an ellipse and reached a maximum distance of twenty-five feet from the center line of the right of way. Above the transmission lines were placed two wires, one on each side, connecting the steel frames of the towers. These were placed on cross arms extending like horns from the top of the tower. These wires were known as static wires and were kept within the spread of the cross arms which had formerly been installed and which supported the transmission lines. When this installation was completed the number of interruptions from lightning was reduced to a fraction of what it was formerly. It is apparent that the installation of the lightning arresters was essential to the rendering of efficient service by the plaintiff, a public utility.

In short, we have a situation where the written grant does not precisely fix the location or limits of the way. In accord with the grant, plaintiff's engineers located the right of way and installed the power lines and tower, and now, twelve years later, it has placed on the land a system of lightning arresters, the wires of which will extend beyond the limits of the right of way as it had been established by use. This, under the law, it cannot do if thereby the plaintiff placed an additional burden on the servient land. "Where a right of way is expressly granted and its precise location and limits are not fixed or defined by the deed, it is competent for the parties to define the location and determine the limits of the right of way by subsequent agreement, use and acquiescence: *Kraut's Appeal*, 71 Pa. 64:" *March-*

*Brownback Stove Co. v. Evans,* 9 Pa. Superior Ct. 597, 603.

Where an easement is granted in general terms without definitely fixing its location or limits, so that the land affected by the exercise of the right cannot be ascertained from an inspection of the writing, the grantee does not thereby acquire a right to use the servient estate without limitation as to place or mode of use. "When the right granted has been once exercised in a fixed and definite course, with the full acquiescence and consent of both parties it cannot be changed at the pleasure of the grantee:" *Hogg v. Bailey,* 5 Pa. Superior Ct. 426, 433. The contemporaneous construction of the agreement is deemed to be a just exhibition of the intent of the parties: *Kraut's Appeal,* 71 Pa. 64; *Jennison v. Walker,* 77 Mass. 423; *Boynton v. Rees,* 25 Mass. 329.

Compelled to resort to extrinsic evidence, we follow the same course as is pursued where the parties to a deed at the time of execution by mutual consent place monuments to correspond with the deed. By such act the monuments define the limits of the grant.

In *Hogg v. Bailey,* supra, Hogg granted a right to back water on land as much as grantee thought necessary and agreed never to claim further damage. Grantee immediately built a dam six feet six inches high backing water to a certain extent on grantor's land. Many years later an eight-inch timber was placed on the breast of the dam sending the water farther back, destroying a road and causing other damage. The court there said (p. 434) : "Where the election has been made and the location and height of a dam determined at the time so as to fix the back flow of the water to the extreme limit, and to a definite point immediately after the execution of the grant, and uninterruptedly continued for fifty years, it must be held as a matter of law that the right or privilege under the agreement of 1837 and deed of

1858 is exhausted by these acts of the parties, as the best evidence of their intention."

In *Moorhead v. Snyder,* 31 Pa. 514, a right of way was granted to convey water from machinery into a creek at a point considered necessary by grantee. Machinery was erected and a race was located. Subsequently, one of the successors in title of grantee dug another race over the land of plaintiff. There the court said (p. 515) : "A grant of a right for a tail-race over the land of another to any point that may be considered necessary, certainly is not a grant of a right to change its location as often as the grantee may make it necessary by an alteration or enlargement of his works. No man can reasonably be presumed to have so intended by such a grant. It is a right that is transitory, as to position, only until the race is once made. It would be an incitement to litigation for the law to treat such an easement as a shifting one, and would greatly depreciate the land on which it is charged and discourage its improvement."

Another case in point is that of *West Chester & P. R. Co. v. Goddard,* 10 Sadler 53, where a right of way was granted to a railway company to such an extent as might be necessary for the construction, opening and use of the road, giving the company the right to occupy so much land as might be required. For years the company maintained a single track on the right of way; the right of way was fenced off by land owners. When the company sought to widen the road and place a second track, the court held it was bound by what it had used and could not take more until security was given and damages assessed and secured.

It is clear that the placing of the counterpoise in the ground and beyond the limits of the right of way as established imposed an additional servitude on defendant's land. The extent and mode of use of the right of way was fixed by the acts of the parties in 1923 and a

similar use for the twelve years following. At the end of that time plaintiff attempted to extend that grant both laterally and by an additional use of the land within the span of the wires. An examination of the deed discloses that valuable rights were reserved to the land owner with respect to the use of the land. Only one tower was to be placed on the twenty-nine acres and damages were to be paid for injuries done to the crops or fences even on the part within the limits that were covered by the overhead wires. This shows that the parties contemplated that the surface of the land would be used by the grantor in the deed except insofar as the location of one tower interfered with such use. Plaintiff now undertakes to use two additional strips of land eleven and one-half feet wide located on each side of the space formerly used and extending across the entire property. The underground extension would interfere with the use of the land by plaintiff for building purposes if a substantial foundation were required. If this extension may be made, then all of defendant's property may be taken whenever plaintiff determines that it needs the land for maintenance or erection of power lines. Such right plaintiff does not have. The right ceased to be transitory when the original installation was completed.

As to the light overhead wires which have been placed above but within the horizontal limits of the span of the power lines, we think a different situation is presented. While technically defendant's ownership extends *usque ad coelum* these light wires place no real additional burden on defendant's land. They do not interfere with the use of the surface and are located within the limits of the span of the power lines and are auxiliary to the use of such power lines. One would scarcely contend that the erection of an ordinary lightning rod on the steel tower would add an additional burden even though such rod extended a few feet above the top of the tower.

These overhead wires bear the same relation to the power wires that a lightning rod would to the tower. We are of the opinion that plaintiff was within its rights in making the overhead installation. By the terms of the deed granting the right of way, the plaintiff had the "right from time to time to build on said right of way, such additional transmission, telephone and telegraph lines as they may wish and determine." Notwithstanding such grant, the limits of occupancy are fixed by the established usage for twelve years; that is, by the location of the wires and tower as made. These overhead lightning arresters are within such limits and add no real burden on the land. Such being the case we are of the opinion that defendant is not entitled to interfere with the overhead wires as installed.

The only remaining complaint of the appellant is that the court failed to make certain findings requested by it. In view of the fact that the court in its final order affirmed all of plaintiff's requests for findings of fact, there is no merit in this contention. The decree of the court below should be modified so as to prevent the defendant from interfering with the overhead wires.

The preliminary injunction made it possible for plaintiff to install the underground wires although it has been finally determined that it did not have a right so to do. We are of the opinion that the court should retain control of the bill to the end that if plaintiff does not, within a reasonable time, make an amicable settlement with defendant for the additional burden heretofore placed or that may hereafter be placed on defendant's land by the underground wires, or exercise such right, if any, as it has to condemn further rights than those secured by the original deed, defendant may, if he so desires, move the court for further relief. Defendant is entitled to the protection of the injunction bond filed by plaintiff.

The decree of the court as herein modified is affirmed.