617 A.2d 51

**Donald C. ZETTLEMOYER and Alena Zettlemoyer, Appellants,**

**v.**

**TRANSCONTINENTAL GAS PIPELINE CORPORATION, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Sept. 18, 1992.

Decided Nov. 6, 1992.

Reargument Denied Jan. 11, 1993.

Ronald J. Mishkin, for appellants.

Joseph Neff Ewing, Jr., for appellee.

Before CRAIG, President Judge, FRIEDMAN, J., and LORD, Senior Judge.

LORD, Senior Judge.

Donald Zettlemoyer and Alena Zettlemoyer appeal from a Monroe County Court of Common Pleas order that sustained Transcontinental Gas Pipeline Corporation's (Transcontinental) preliminary objections and dismissed the Zettlemoyers' petition for Appointment of a Board of View.

The facts as found by the trial court are as follows. The Zettlemoyers are owners of approximately fifty acres in Ross

Township, Monroe County.[1] Transcontinental, a Delaware corporation, holds a right-of-way agreement which was granted on April 11, 1958 by the Zettlemoyers' predecessor in title, Serfass Lumber Company.[2] The Zettlemoyers acquired title to the premises in 1988, subject to the existing rights of Transcontinental.

In August 1958, Transcontinental cleared a one-hundred foot wide area in order to install a pipeline which was 23.275 inches in diameter. In August 1971, Transcontinental laid another pipeline, 24 inches in diameter, within the one-hundred foot wide area that was cleared. Thereafter, in 1991, Transcontinental constructed a third pipeline that was 32 inches in diameter. Due to the construction of the third pipeline, the right-of-way was expanded to one-hundred and thirty feet wide.

The Zettlemoyers, on July 3, 1991, filed a petition for appointment of viewers pursuant to Section 1–502(e) of the Eminent Domain Code,[3] alleging a de facto taking of their property.

It is well-settled law that preliminary objections are the exclusive method under the Code to raise legal and factual objections to a petition for appointment of viewers which alleges a de facto taking. *Holmes Protection of Pittsburgh v. Port Authority of Allegheny County*, 90 Pa. Cmwlth. 342, 495 A.2d 630 (1985). The Court may not dismiss such objections without first conducting an evidentiary hearing to determine whether a de facto taking took place. *Id.* Our scope of review, where the Court sustains the preliminary objections, is

1. The deed is recorded in deed book volume 1475, Page 73 and deed book volume 1646, Page 1169, Monroe County records.

2. Under Pennsylvania law, a right-of-way is considered an easement. *Merrill v. Manufacturers Light & Heat Co.*, 409 Pa. 68, 185 A.2d 573 (1962).

3. Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. § 1–502(e); Section 1–502(e) of the Code states in pertinent part:
    (e) If there has been a compensable injury suffered and no declaration of taking therefor has been filed, a condemnee may file a petition for the appointment of viewers substantially in the form provided for in subsection (a) of this section, setting forth such injury.

limited to whether there is competent evidence in the record to support the findings made or whether an error of law was committed. *Id.*

A de facto taking under Section 1-502(e) of the Code occurs whenever an entity clothed with the power of eminent domain substantially deprives an owner of the use and enjoyment of his property. *McCracken v. City of Philadelphia*, 69 Pa. Cmwlth. 492, 451 A.2d 1046 (1982). Where a de facto taking is alleged, the property owners bear a heavy burden of proof and must show that exceptional circumstances exist which substantially deprive them of the use of their property and, further, that the deprivation is the direct and necessary consequence of the actions of the entity having the power of eminent domain. *Id.*

The section of the right-of-way agreement relevant to the instant appeal states in pertinent part:

There is included in this grant the right, from time to time, to lay, construct, maintain, operate, alter, repair, remove, change the size of, and replace one or more additional lines of pipe approximately parallel with the first pipe line laid by Grantee hereunder and for any such additional line so laid the Grantee shall pay Grantor a sum equivalent to One Dollar (1.00) per lineal rod of such additional line, or such proportionate part thereof as Grantor's interest in said lands bears to the entire fee, to be paid after the completion of the construction of such additional line.

In construing the scope of an easement, the intention of the parties must be ascertained. *Lease v. Doll*, 485 Pa. 615, 403 A.2d 558 (1979). The width of the right-of-way or easement is determined by the permitted use when no width is stipulated in the agreement. *Id.* Where the terms of an express grant of an easement are general, ambiguous, and not defined by reference to the circumstances known to the parties at the time of the grant, the easement is to be construed in favor of the grantee, and the easement may be used in any

manner that is reasonable.[4]  *Id.*

Transcontinental relies on *Lease* for the proposition that, as long as a use of an easement is reasonable, it should be permitted.  However the question in *Lease* was whether an express grant of a general right-of-way over the servient tenement was limited to pedestrian use or vehicular use where the width of the right of way was not specified.  The Leases' property was landlocked and the sole means of ingress and egress to the public road was over the servient tenement.  The easement had been used primarily as a footpath, except for a few occasions.  The Supreme Court held that use of the easement was not restricted to pedestrian use, that vehicular use of the easement was reasonable, and that therefore expansion of the width was within the parameters of the original grant.  A restricted interpretation of the easement in *Lease* would have resulted in a situation where the grantee would have been landlocked insofar as vehicular traffic was concerned.

■ In the present case, we are not presented with an easement that is the sole ingress and egress from a landlocked property, as was the case in *Lease*.  Rather, this easement is for the construction and maintenance of pipelines to transport gas, oil and petroleum products.  It is not a question of whether Transcontinental is precluded from laying a third pipeline, but it is a question of whether Transcontinental has to pay for the actual damages it causes or only for the one dollar per lineal rod provided for in the agreement it drafted in 1958.

4.  The trial court did not make a specific finding that Transcontinental drafted the right-of-way agreement.  However, Transcontinental and the Zettlemoyers state in their briefs that the agreement is the standard form used by Transcontinental to obtain right-of-ways.  In addition, Transcontinental stated in its brief, "numerous cases cited ... interpreting Transco's specific right-of-way agreements ... permit additional lines."  Our Supreme Court, in *Wilkes–Barre Township School District v. Corgan*, 403 Pa. 383, 170 A.2d 97 (1961), stated, "[i]t is also beyond controversy, that a written document must be construed most strongly against the parties drafting it."  Although in most cases, an easement is construed in the grantee's favor, we are guided by *Wilkes–Barre* in our interpretation of this agreement.

A far more appropriate case to be applied to the situation now before the Court is *Pennsylvania Water & Power Co. v. Reigart,* 127 Pa. Super. 600, 193 A. 311 (1937). In *Reigart,* defendant's predecessor in title granted an easement and right-of-way to plaintiff's predecessor in title, his heirs and assigns for the construction and maintenance of electrical lines, telephone, and telegraph lines, together with requisite structures, wires, and equipment. The limits of the right-of-way were not defined by the agreement. The grantee was given the right to select the route of the right of way, as was Transcontinental in the present case.[5] Twelve years after the installation of the original line, the grantee placed on the land a system of lightening arresters which extended beyond the limits of the right-of-way as it had been established by use.

The issue in *Reigart* was not whether the public utility could construct the necessary structures, but if it did, was it required to pay the landowner damages. In the instant case, we have the same situation. The question is not whether Transcontinental can construct a third or fourth pipeline, but whether the area in which it can construct such pipelines without paying damages is unlimited. Particularly appropriate here is the language in *Reigart,* where the court said:

[w]here a right of way is expressly granted and its precise location and limits are not fixed or defined by the deed, it is competent for the parties to define the location and determine the limits of the right of way by subsequent agreement, use and acquiescence....

[i]t is clear that the placing of the counterpoise in the ground and beyond the limits of the right of way as established imposed an additional servitude on defendant's land. *The extent and mode of use of the right of way was fixed by the acts of the parties in 1923 and a similar use for the twelve years following.* At the end of that time plaintiff attempted to extend that grant both laterally and by an

5. The right-of-way agreement with which we are concerned provides:
 The Grantee to have the right to select the route (the laying of the first pipeline to constitute the selection of the route by Grantee), under, upon, over, through, and across the lands of the Grantor situated in Monroe County.

additional use of the land within the span of the wires ... *If this extension may be made, then all of the defendant's property may be taken whenever the plaintiff determines that it needs the land for maintenance or erection of power lines. Such right plaintiff does not have....*

By the terms of the deed granting the right of way, the plaintiff had the "right from time to time to build on said right of way, such additional transmission, telephone and telegraph as they may wish and determine." *Notwithstanding such grant, the limits of occupancy are fixed by the established usage for twelve years; that is, by the location of the wires and tower as made. Reigart,* 127 Pa. Superior Ct. at 604, 606–608, 193 A. at 313, 315 (citations omitted) (emphasis added).

Transcontinental attempts to distinguish *Reigart* on the fact that the grantee's use of the property was limited by agreement to one tower. The grantee could hang as many overhead wires as needed on that tower, but could not expand its use beyond the width of the tower. Transcontinental contends there are no such limitations in the instant agreement. We do not agree with Transcontinental's interpretation of *Reigart.* The Superior Court based its analysis on the fact that the placing of the counterpoise in the ground and beyond the limits of the right-of-way as established imposed an additional servitude on defendant's land. The critical fact for the court was that the use and extent of the right-of-way was established by the parties. Subsequently, the power company's actions to expand the easement, after it had been established by use, was rejected by the court.

Here, there is an express grant of an easement; however, the width of the easement is vague and ambiguous. The easement in question was established and maintained by Transcontinental at a width of one-hundred feet for thirty-three years, which width established the use and extent of the agreement. Transcontinental cannot, thirty-three years later, expand the easement without compensating the Zettlemoyers for taking their land.

Therefore, we hold that the trial court committed an error of law in sustaining the preliminary objections of Transcontinental and dismissing the Zettlemoyers' petition for a board of view based on the right-of-way agreement.[6]

Accordingly, the trial court's order is reversed and the case is remanded for the appointment of a board of view.

## ORDER

AND NOW, this 6th day of November, 1992, the order of the Court of Common Pleas of Monroe County at No. 2772 Civil 1991, dated February 20, 1992 is hereby reversed and remanded for proceedings not inconsistent with this opinion.

Jurisdiction relinquished.

---

**6.** Transcontinental refers us to cases from other jurisdictions that interpret its right-of-way agreement and hold that it may construct additional pipelines pursuant to said agreement. While we certainly respect those cases we are, of course, not bound by them and conclude that, under the Pennsylvania cases we have cited, our decision is correct.