657 A.2d 920

**Donald C. ZETTLEMOYER and Alena Zettlemoyer, h/w, Appellees,**

v.

**TRANSCONTINENTAL GAS PIPELINE CORPORATION, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 8, 1994.

Decided April 18, 1995.

338

Joseph Neff Ewing, Jr., Malvern, William M. Janssen, Philadelphia, for Trans. Gas Pipeline Corp.

Ronald J. Mishkin, Stroudsburg, for D.C. and A. Zettlemoyer.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

### OPINION

MONTEMURO, Justice.

Appellant, Transcontinental Gas Pipeline Corporation (Transco), appeals from an order and opinion of the Commonwealth Court reversing an order of the Court of Common Pleas that sustained Transco's preliminary objections and dismissed Appellees' petition for appointment of a Board of Viewers under the Eminent Domain Code, 26 Pa.S. §§ 1–101 to 1–903.

The issue presented for our consideration is whether Transco committed a *de facto* taking of Appellees' land by clearing an area 30 feet beyond the 100 foot right of way it had maintained on Appellee's property since 1958. Because we find Transco's actions within the intent of the original parties to the grant and "reasonable and necessary" to the purpose of the grant, we reverse.

The facts of this case are simple and undisputed. Transco owns and constructs pipelines in several states for the purpose of transporting natural gas in interstate commerce. In 1958, Transco purchased a pipeline right-of-way across property owned by the Serfas Lumber Company in Ross Township, Monroe County. The terms and conditions of this right of way were set forth in a written contract between Transco and Serfas. The pertinent part of that agreement reads as follows:

[Grantor] does hereby grant, bargain, sell and convey unto TRANSCONTINENTAL GAS PIPELINE CORPORATION, a Delaware corporation, its successors and assigns, (hereinafter called GRANTEE), a right of way and easement for the purposes of laying, constructing, maintaining, operating, repairing, altering, replacing and removing pipelines ..., the Grantee to have the right to select the route (the laying of the first pipeline to constitute the selection of the route by the grantee), under, upon, over, through, and across the land of the grantor....

There is included in this grant the right, from time to time, to lay, construct, maintain, operate, alter, repair, remove, change the size of, and replace one or more additional lines of pipe approximately parallel with the first pipeline laid by the Grantee hereunder and for any such additional line so laid the Grantee shall pay the Grantor a sum equivalent to One Dollar ($1.00) per lineal rod of such additional line, or such proportionate part thereof as Grantor's interest in said lands bears to the entire fee, to be paid after the completion of the construction of such additional line.

The Grantee shall have all other rights and benefits necessary for the full enjoyment or use of the rights herein granted, including, but without limiting the same to, the free and full right of ingress, egress and regress over and across said lands and other lands of the grantor to and from said right from time to time to cut and remove all trees, undergrowth and other obstructions that may injure, endanger or interfere with the construction, operation, maintenance and repair of said pipelines....

... Grantee agrees to bury said pipelines below normal plow depth and to pay for any physical harm to growing crops, timber, fences, or other structural [sic] improvements caused by construction, operation, repairing, alteration, replacement or removal of said pipelines and appurtenant facilities.

Under this agreement, Transco cleared a 100 foot-wide right of way in August of 1958, and built its first pipeline across the

property. In August of 1971, Transco constructed a second pipeline across the property, twenty-five feet from the first pipeline. A third pipeline was built in 1991. All three pipelines were constructed within the 100 foot wide right of way Transco has maintained on the property since 1958. However, in building the third pipeline, Transco cleared an additional 30 feet of woods adjacent to the 100 foot right of way. Transco maintains that it was necessary to clear this additional area so that its construction equipment could safely maneuver in constructing the third pipeline.

Appellees acquired the property from Serfas by deeds in December of 1985 and January of 1988. They took title to the property subject to Transco's right of way. On July 3, 1991, Appellees filed a petition for an appointment of viewers in the Court of Common Pleas of Monroe County pursuant to Section 1–502 of the Eminent Domain Code [1]. Appellees' petition claimed that the clearing of the additional land during the construction of the third pipeline was a *de facto* condemnation requiring additional compensation.

The Court of Common Pleas appointed a Board of Viewers. Transco filed preliminary objections pursuant to Section 1–504 of the Eminent Domain Code.[2] After consideration of these objections, the Court of Common Pleas entered an order and opinion dismissing Appellee's petition. The Court of Common Pleas held that "[t]he clearing of a 130–foot wide area was the minimum area necessary for use and enjoyment of the granted right of way." *Zettlemoyer v. Transcontinental Gas Pipeline*

1. This section reads in pertinent part:
 § 1–502 **Petition for the appointment of viewers**
 (a) The condemnee may file a petition requesting the appointment of viewers. . . .

2. Section 1–504 reads in pertinent part:
 § 1–504 **Appointment of viewers; notice; objections** * * * *
 Any objection to the appointment of viewers not theretofore waived may be raised by preliminary objections filed within twenty days after the receipt of notice of the appointment of viewers. Objections to the form of the petition or the appointment or the qualifications of the viewers are waived unless included in preliminary objections. The court shall determine promptly all preliminary objections and make such orders and decrees as justice shall require.

*Corporation,* No. 2772 Civil 1991, slip op. at 6 (Court of Common Pleas of Monroe County Feb. 20, 1992).

Appellees appealed to the Commonwealth Court which reversed the trial court. Relying on *Pennsylvania Water & Power Company v. Reigart,* 127 Pa.Super. 600, 193 A. 311 (1937), the Commonwealth Court held:

> The easement in question was established and maintained at a width of one-hundred feet for thirty three years, which width established the use and extent of the agreement. Transcontinental cannot, thirty-three years later, expand the easement without compensating the Zettlemoyers for taking their land.

*Zettlemoyer v. Transcontinental Gas Pipeline Co.,* 151 Pa. Commw. 393, 400, 617 A.2d 51, 55 (1992).

We granted allocatur because the holding of this panel of the Commonwealth Court was in conflict with that of the panel in *Bowers v. Texas Eastern Transmission Corp.,* 148 Pa. Commw. 500, 611 A.2d 1350 (1992).

■ Our scope of review in a case where the trial court has sustained preliminary objections to a petition for an appointment of viewers is well settled. We are limited to determining whether or not there is competent evidence in the record to support the findings made by the court of common pleas and whether or not any errors of law were committed. *Redevelopment Auth. of Oil City v. Woodring,* 498 Pa. 180, 185 n. 6, 445 A.2d 724, 727 n. 6 (1982).

■ A landowner alleging a *de facto* taking is under a "heavy burden" to establish that such a taking has occurred. *Riedel v. County of Allegheny,* 159 Pa.Commw. 583, 588, 633 A.2d 1325, 1328 (1993); *Darlington v. County of Chester,* 147 Pa.Commw. 177, 184, 607 A.2d 315, 318, *appeal denied,* 531 Pa. 657, 613 A.2d 562 (1992). Under our Eminent Domain Code, a taking occurs whenever "the entity clothed with the power of eminent domain substantially deprives an owner of the use and enjoyment of his property. *Woodring,* 498 Pa. at 185, 445 A.2d at 726–27 (quoting *Griggs v. Allegheny County,* 402 Pa.

411, 414, 168 A.2d 123, 124 (1961), *rev'd on other grounds,* 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962)).

■ With these principles in mind, we examine the case at bar. The plain language of the agreement in the instant case unambiguously granted Transco. the right to construct the third pipeline across Appellees' property. The agreement states "included in this grant [is] the right from time to time ... [to] construct ... one or more additional lines of pipe approximately parallel with the first pipe." Thus, the Appellees do not dispute the right of Transco to build a third pipeline or maintain a 100 foot wide right-of-way across their property. Appellees do argue that the additional 30 feet of land cleared by Transco beyond the 100 foot wide right-of-way in 1991 is a *de facto* taking of their property. They assert that because Transco maintained a 100 foot wide right-of-way for more than thirty years, the grant of easement was limited to 100 feet by Transco's use and acquiescence. We do not agree.

■ It is well established that the same rules of construction that apply to contracts are applicable in the construction of easement grants. *Sigal v. Manufacturers Light and Heat Company,* 450 Pa. 228, 234, 299 A.2d 646, 649 (1973); *Percy A. Brown & Co. v. Raub,* 357 Pa. 271, 286, 54 A.2d 35, 43 (1947). Where the width of an easement is unambiguously specified in the grant, the grantee is obviously restricted to that width even if it is insufficient for his purposes and enjoyment. 25 Am.Jur.2d *Easements and Licenses* § 78 (1966). However, in the instant case, the agreement fails to specify the width of the easement and is, therefore, ambiguous on this point. In ascertaining the scope of an easement, the intention of the parties must be advanced. *Lease v. Doll* 485 Pa. 615, 621, 403 A.2d 558, 561 (1979); *Sigal,* 450 Pa. at 234, 299 A.2d at 649. "Such intention [of the parties] is determined by a fair interpretation and construction of the grant and may be shown by the words employed construed with reference to the attending circumstances known to the parties at the time the grant was made." *Lease,* 485 Pa. at 623, 403 A.2d at 561 (quoting *Merrill v. Manufacturers Light and Heat Co.,* 409 Pa. 68, 73,

185 A.2d 573, 575 (1962)). Where the grant of an easement is unrestricted, the grantee is given such rights as are necessary for the reasonable and proper enjoyment of the thing granted. *Taylor v. Heffner,* 359 Pa. 157, 163, 58 A.2d 450, 453 (1948); *Hammond v. Hammond,* 258 Pa. 51, 56, 101 A. 855, 856 (1917). Thus, when the width of an easement is not specified in the grant, the easement "will be held to be of such width as is suitable and convenient for the ordinary uses of free passage and if the particular object of the grant or the way is stated, the width must be suitable and convenient with reference to that object." *Lease,* 485 Pa. at 620 n. 5, 403 A.2d at 561 n. 5 (quoting 28 A.L.R.2d 253 (1953)). Thus, our cases tell us that when the grant of an easement is ambiguous we must determine if the grantee's asserted use is a reasonable and necessary use in relation to the original purpose of the grant and within the intention of the original parties to the grant.

For example, in *Lease,* the deed expressly granted the grantee a right-of-way over the grantor's land to reach the grantee's property from a public roadway. The successor grantee prepared the right-of-way for vehicular use. The successor grantor constructed a fence which limited the right-of-way to a footpath. When the successor grantee sued, the successor grantor argued that the original owner of the property did not own an automobile and, accordingly, the right of way was limited to pedestrian use. We noted the "general legal principle that an express easement granted in general terms must be construed to include any reasonable use...." *Lease,* 485 Pa. at 624, 403 A.2d at 563 (citations omitted). We found that the unambiguous language of the grant established its purpose as providing an outlet to the main road. *Id.* at 622, 403 A.2d at 562. We ultimately held that the successor grantee's contemplated use of the easement for vehicular travel "reasonably fulfill[s] [the easement's] specific purpose, namely that the easement is to serve as an outlet from [the grantee's] land to the public road...." *Id.* at 625, 403 A.2d at 564.

In *Bowers v. Texas Eastern Transmission,* 148 Pa.Commw. 500, 611 A.2d 1350 (1992), our Commonwealth Court consid-

ered a case remarkably similar to the case at bar. In *Bowers,* a pipeline company cleared a path 125 feet wide to replace a 20 inch gas pipeline with a 36 inch gas pipeline under an existing easement agreement. Quoting our decision in *Lease,* the panel noted that the power company could use its easement in any manner that was reasonable. *Bowers,* 148 Pa. Commw. at 504, 611 A.2d at 1352. The grantor claimed that the pipeline's activities constituted a *de facto* taking of their property because the pipeline company was limited to a previously cleared 40 foot wide path by its prior use and acquiescence. The Commonwealth Court rejected this theory and affirmed the finding of the trial court that the additional clearing by the pipeline company was necessary and reasonable for the installation of the new pipeline. *Id.* at 505, 611 A.2d at 1352.

In the instant case, we believe that the clearing of the additional 30 feet by Transco was within the original intent of the parties to this grant. As discussed *supra,* the parties to this agreement clearly intended that Transco would build multiple pipelines along the easement through Appellees' property. The unambiguous terms of the agreement contemplated that Transco might clear additional land in the construction of additional pipelines as it provides a remedy for "any physical damage to growing crops, timber, fences, or other structural [sic] improvements caused by construction...." In fact, the express terms of the agreement gave Transco "all other rights and benefits necessary or convenient for the full enjoyment or use of the rights of the herein granted including ... the right from time to time to cut and remove all trees, undergrowth, and other obstructions that may injure, endanger, or interfere with the construction ... of said pipe lines." We find that the clear language of the agreement is evidence of the original intent of the parties to allow Transco to clear additional land where such clearing is reasonably necessary to achieve the purpose of the agreement.

We believe that Transco's clearing of 30 additional feet beyond the 100 foot wide right of way established in 1958 was "reasonable and necessary" to effectuate the purposes of the

grant. The purpose of this grant was clearly to allow Transco to construct one or more gas pipelines across Appellees' property. Transco maintains that it was required to clear an additional 30 feet of woods in order to allow its construction equipment to maneuver safely in constructing the third pipeline. Transco produced expert testimony that this additional clearing was needed to prevent construction equipment from operating on top of the two existing pipelines and to prevent dirt from being piled on top of the two existing pipelines during the construction of the third pipeline. We find that the record supports the trial court's conclusion that Transco's actions in clearing an additional 30 feet beyond its 100 foot wide right-of-way were "reasonable and necessary" for the construction of the third pipeline.

Appellees argue that Transco was limited to a 100 foot wide right of way by its subsequent agreement, use, and acquiescence. Essentially, Appellees argue that because Transco has maintained a 100 foot wide right-of-way since 1958, the width of the easement is limited to this width. The Commonwealth Court agreed with Appellees, relying on *Pennsylvania Water and Power Co., v. Reigart*, 127 Pa.Super. 600, 193 A. 311 (1937). In *Reigart*, a landowner gave a power company an easement for the purpose of constructing and maintaining electric, telephone, and telegraph lines across his property. Shortly after the right of way was granted in 1923, the power company installed the electric lines including one tower. Twelve years later, the company wished to re-enter the property and install lightning arresters on the tower which required wires that would expand beyond the previously maintained right of way. The Superior Court found that the controlling rule was that "[w]here a right of way is expressly granted and its precise location and limits are not fixed by the deed, it is competent for the parties to define the location and determine the limits of the right of way by subsequent agreement, use and acquiescence." *Id.* at 604, 193 A. at 313 (citations omitted). The Superior Court concluded that the "extent and mode of use of right of way was fixed by the acts of the parties in 1923 and a similar use for the twelve years

following." *Id.* at 606–08, 193 A. at 315. Based on *Reigart,* the Commonwealth Court concluded below:

> "The easement in question was established and maintained by Transcontinental at a width of one-hundred feet for thirty-three years, which width established the use and extent of the agreement. Transcontinental cannot, thirty-three years later, expand the easement ..."

151 Pa.Commw. at 400, 617 A.2d at 55.

We do not agree that "subsequent agreement, use, and acquiescence" of an easement establishes its width as a matter of law when the written agreement is ambiguous. The Superior Court's holding in *Reigart* is based on our ancient decision in *Kraut's Appeal,* 71 Pa. 64 (1872) and its own ancient decision in *Hogg v. Bailey,* 5 Pa.Super. 426 (1897). However, both the Superior Court in *Reigart* and the Commonwealth Court in the instant case failed to consider this Court's subsequent cases rejecting the "subsequent agreement, use, and acquiescence" argument. In *Bowers v. Myers,* 237 Pa. 533, 85 A. 860 (1912), we considered whether a property owner could install a curb to an alley thus preventing use by horses or vehicles. We stated that "[t]he fact that the person entitled to such way has used it for one purpose only for a long series of years does not restrict its use to that purpose only." *Id.* at 538–39, 85 A. at 861 (quoting *Jones on Easements* § 375 (1898)). Instead, we stated the general rule that "a right of way expressed in general terms is to be construed to include any reasonable use to which it may be put." *Id.* at 538, 85 A. at 861. We held that vehicular use of the alley was a "reasonable use" and upheld the injunction against installing the curb.

In *Hammond v. Hammond,* 258 Pa. 51, 101 A. 855 (1917), we considered whether a landowner in possession of a right of way over a creek could build a bridge as a means of crossing the ford where the method of crossing had not been designated in the original grant. We held:

> The fact that the defendant did not proceed immediately to build the bridge does not prove that the parties construed

the grant as precluding him from that right; and the fact that there was then no bridge at that point is not controlling; neither is the fact that for twenty-one years thereafter defendant and his family managed to exist there without a bridge. As defendant had possession of the private road during all that time, he lost no right by failing to improve it.

*Id.* at 55–56, 101 A. at 856.

Instead, we once again stated that a grantee "has the right to do whatsoever is necessary to make it passable or useable for the purposes named in the grant." *Id.* at 56, 101 A. at 856 (citations omitted). We ultimately held that the grantee could improve the road "in such a manner as to make it fit for the purpose expressed in the grant," including building a bridge over the creek. *Id.* at 56, 101 A. at 857.

In *Lease,* a much more recent case, we also rejected a subsequent agreement, use, and acquiescence argument. We found that "the scope of an easement is not diminished because the owner of the benefited land failed to immediately use the easement to the fullest extent possible." *Lease,* 485 Pa. at 623 n. 9, 403 A.2d at 563 n. 9. Instead, we stated that "when, as in the instant case, the width of an easement is unspecified, the easement is of such width as is suitable and convenient for its reasonable use ..." *Id.* at 624–25 n. 10, 403 A.2d at 563 n. 10.

These cases demonstrate that we have repeatedly rejected a prophylactic rule that would limit the grant of an easement to the grantee's subsequent agreement, use, and acquiescence. Instead, our cases hold that where an easement is ambiguous, the grantee shall have "reasonable and necessary" use of the right of way within the purpose of the easement and the intentions of the original parties to the grant. We continue to so hold today. We acknowledge that a grantee's subsequent agreement, use, and acquiescence has some value as evidence of the original intent or purpose of the grant. In fact, in many cases it may be the only evidence. However, it should not be the sole extrinsic evidence considered by a court when the written agreement is ambiguous.

In the instant case, we find the unambiguous language in the agreement granting Transco the right to build additional pipelines, providing a remedy for damage to timber and structures, and expressly giving Transco the right to cut trees and remove growth in order to further construction of pipelines, is better evidence of the original parties' intent than Transco's subsequent use and acquiescence. We also reject Appellee's argument that our holding today will allow Transco to clear all their land. Our holding limits Transco to what is reasonable and necessary to fulfill the purpose of the agreement within the original intent of the parties to the grant. Accordingly, we agree with the trial court that the Appellees failed to fulfill their heavy burden of proving that Transco's actions constituted a taking of their land. Instead, we concur in the reasoning of the trial court that Transco's actions were necessary to the purpose of the easement and, therefore, within the rights granted by the easement.

Therefore, we reverse the order of the Commonwealth Court and reinstate the order of the Court of Common Pleas of Monroe County.

PAPADAKOS, J., did not participate in the decision of this case.

MONTEMURO, J., is sitting by designation.