J-A30011-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOHN W. NEVILLE JR., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT LARDIERE, ADMINISTRATOR OF THE ESTATE OF MICHELE S. LARDIERE, FORMERLY MICHELE S. LYNN | |
| Appellant | No. 330 MDA 2016 |

Appeal from the Judgment Entered March 28, 2016
In the Court of Common Pleas of Fulton County
Civil Division at No(s): 2013-303

BEFORE:  BOWES, OLSON AND STABILE, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 25, 2017**

Robert Lardiere, Administrator of the Estate of Michele S. Lardiere, formerly Michele S. Lynn, contests the equity court's finding that Appellee John W. Neville, Jr. enjoys an express 12-foot easement that traverses Appellant's property.  We affirm.

Mr. Neville instituted this equity action seeking injunctive and declaratory relief against Michele S. Lynn.[1]  Both parties lived on West

_____

[1] Ms. Lynn married after this action was brought, and became known as Michele S. Lardiere.  On February 24, 2016, a notice of death and substitution of personal representative was filed of record in this action. That document indicated that Ms. Lynn/Mrs. Lardiere died and that her
*(Footnote Continued Next Page)*

Tannery Road, Wells Township. Mr. Neville averred that he enjoyed the use of two express easements, a 15-foot right of way between two lots owned by Ms. Lynn and a 12-foot easement on the northern portion of one of her lots. In this lawsuit, Mr. Neville asked for a ruling that he could utilize the two roadways.

In order to access his garage, Mr. Neville is required to traverse West Tannery Road, turn onto a clearly marked 15-foot alley between Ms. Lynn's lots and travel north, and then turn east and travel on a 12-foot easement located on the northern portion of the lot that contains Ms. Lynn's house. In his complaint, Mr. Neville averred that Ms. Lynn blocked the two easements so he could not use them and informed him that he did not have the right to use them. Mr. Neville, whose garage is on the top of a steep incline behind his home, had no other access to that structure. The following illustrates the situation:

_(Footnote Continued)_ ───────────

administrator was to be substituted as a party to this action in her stead. For ease, we will refer to the appealing party as Ms. Lynn.

J-A30011-16



PLAT
OF SURVEY OF LAND OF
MICHELE S. LYNN
NOW BY MARRIAGE
MICHELE S. LARDIERE
WELLS TOWNSHIP
FULTON COUNTY
PENNSYLVANIA
DATE: 7-5-2012

SURVEY BY: RICK STEELE P.L.S.
11647 RAYSTOWN ROAD, SAXTON, PA. 16678
PHONE: 814-635-4020

Ms. Lynn filed preliminary objections raising a claim that Mr. Neville failed to join indispensable parties to this action. Those objections were denied, Ms. Lynn answered the complaint, and the matter proceeded to a nonjury trial. The lots owned by Mr. Neville and Ms. Lynn are part of a subdivision plan created by a common owner, W.H. Baumgardner, but that subdivision was not recorded. Ms. Lynn's house is on Lot 4 of the subdivision. The deed to Ms. Lynn indicated that she purchased two lots. These lots, as indicated in the above schematic, were separated by a 15-foot alley, which served as the boundary for each of her two lots. Thus, Ms. Lynn did not own the 15-foot alley running north to south. Additionally, Ms. Lynn's deed, as well as every deed in her chain of title, provided, "The 15 foot alley on the West side [of Lot 4] and the 12 foot alley on the North side are open and public alleys for use of all concerned." Plaintiff's Exhibits F, G, H, I. In light of this language, Ms. Lynn abandoned her position that Mr. Neville could not utilize the 15-foot alley between her lots.

The deed to Ms. Lynn, as well as those in her chain of title, also indicated in general language that the northern boundary of Lot 4 was the 12-foot alley on land owned by Michael and Brenda Worthing in the above survey. In the metes and bounds description, the deed outlined that the northern boundary to Lot 4 was along the 12-foot alley "thence N. 27-12

[degrees] E 176 feet, **less a 12 foot alley or to a 12 foot alley**." Exhibit E, Deed to Ms. Lynn, 9/11/00 (emphasis added).[2]

The 12-foot easement running east and west that Mr. Neville must travel to get to his garage crossed the northern portion of Lot 4 owned by Ms. Lynn. The 12-foot alley on the Worthing property that is the northern boundary of Ms. Lynn's Lot 4 does not accord Mr. Neville access to the garage.

Garey Sprowl formerly owned Mr. Neville's land, and served as a witness at trial. Mr. Sprowl, who lived on the land in question from 1946 to 1965, indicated that he was familiar with the 15-foot alley and 12-foot easement used to gain access to the garage. He reported that the garage door opened onto a 12-foot easement that began on his property and then crossed over the northern portion of Lot 4. This easement was separate from and south of the 12-foot alley on the Worthings' lot. The 12-foot easement traversing Lot 4 was the pathway actually used to reach the garage the entire time that Mr. Sprowl owned the land, and the former owners of Lot 4 never contested his right to cross their land to reach the garage.

_____

[2] Both easements identified in this document are referred to as "alleys." In order to clarify this issue, we will refer to the northernmost easement located on the Worthing's property as an "alley," and the roadway crossing Lot 4 and used to gain access to the garage as an "easement."

Since the garage cannot be reached by using the 12-foot alley that is the northern boundary of Lot 4, the equity court concluded that there were two 12-foot express easements, the one used by Mr. Sprowl and the alley that was the northern boundary. It based this determination upon: 1) the emphasized language in Ms. Lynn's deed; 2) Mr. Sprowl's testimony that he used an easement to gain access to his garage and that easement crossed the northern portion of Lot 4; 3) a document prepared by the Pennsylvania Department of Transportation; and 3) the court's personal view of Lot 4, which demonstrated that there was a visible road leading to the garage that crossed over the northern portion of Lot 4 and that was evident when Ms. Lynn bought her property in 2000. Trial Court Opinion, 9/29/15, at 5.

The equity court thereafter rendered the following verdict:

[T]he Court having conducted a view of the real estate at issue on June 24, 2015 and conducted a bench trial following the view, at which testimony was presented and deeds of record and various plans and surveys were received into evidence; and the Court having read and reviewed the proposed findings of fact and briefs of counsel for the parties;

IT IS HEREBY ORDERED that Defendant, Michele S. Lynn, now Michele Laurdiere, is hereby permanently enjoined from interfering or obstructing in any way the 15 foot alleyway on the West side of Tract No. 1 at Deed Book 190, page 414, and the 12 foot alley which traverses over the North portion of Defendant's real estate and referred to in Deed Book 190, page 414.

The Court finds that Plaintiff has a private easement to use the 15 foot alleyway on the West side of the Defendant's real estate and the 12 foot alleyway over the most northern portion of

- 6 -

Defendant's real estate to access the rear of Plaintiff's real estate described at Record Book 550, page 16.

The court will go to the premises on October 20, 2015, at 9:00 p.m., and will mark out the exact location of the two (2) alleys on the ground and any markers so established shall not be destroyed or disturbed by either party or any other person acting at their direction or on their behalf.

Order of Court, 9/28/15, at 1-2. The court then marked an easement over the northern portion of Lot 4, as follows:



Ms. Lynn filed a post-trial motion contesting the equity court's decision; said motion was denied. Judgment was entered on the verdict in favor of Mr. Neville, and this appeal followed. These issues are presented for our review:

> [1.] Whether the trial court erred by failing to dismiss the Complaint for failure to join certain indispensable parties.
>
> [2.] Whether the trial court erred and/or abused its discretion by changing the location of the 12-foot easement by creating a second 12-foot easement.
>
> [3.] Whether the trial court erred and/or abused its discretion by basing its conclusion on testimony that would support a prescriptive easement, a theory not pled in the complaint or advanced at trial.
>
> [4.] Whether the trial court erred and/or abused its discretion in denying Appellant's request for a new trial based upon the creation of a second 12–foot easement.
>
> [5.] Whether the trial court erred and/or abused its discretion in denying, in part, Appellant's request to supplement the record.

Appellant's brief at 12.

> Initially, we outlined our standard of review:
>
> When reviewing the findings of a court in equity, an appellate court's review "is limited to a determination of whether the chancellor committed an error of law or abused his discretion. A final decree in equity will not be disturbed unless it is unsupported by the evidence or demonstrably capricious." *Kepple v. Fairman Drilling Co.,* 615 A.2d 1298, 1302 (Pa. 1992)(internal quotation marks omitted). Although facts found by the chancellor, when supported by competent evidence in the record, are binding, no such deference is required for conclusions of law, which we review *de novo. **Id.***

*T.W. Phillips Gas and Oil Co. v. Jedlicka,* 42 A.3d 261, 267 (Pa. 2012).

Ms. Lynn first avers that two indispensable parties were improperly omitted as defendants herein: 1) New Enterprise Electric Co-Operative, Inc., the owner of a utility pole that is within the 15-foot easement; and 2) Michael and Brenda Worthing, who own the property that borders the parties' real estate on the north.[3] If a party fails to join an indispensable party, the court lacks jurisdiction over the matter. **Orman v. Mortg. I.T.**, 118 A.3d 403 (Pa.Super. 2015); Pa.R.C.P. 1032(b) ("Whenever it appears by suggestion of the parties or otherwise that . . . there has been a failure to join an indispensable party, the court shall order that . . . the indispensable party be joined, but if that is not possible, then it shall dismiss the action.").

A party is considered indispensable "when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights." **Orman**, **supra** at 406 (citation omitted). If a person's rights would not be impaired by a decision or if no redress is sought against that person, the person it not an indispensable party. **Id**. These factors are to be weighed in making a ruling as to whether a person is an indispensable party:

---

[3] We note that Ms. Lynn raised this question in preliminary objections, and the court deferred ruling on whether the electric company and/or the Worthings would have to be joined herein until the evidence indicated whether they had a right or interest in this lawsuit that might be affected by its resolution.

1. Do absent parties have a right or an interest related to the claim?

2. If so, what is the nature of that right or interest?

3. Is that right or interest essential to the merits of the issue?

4. Can justice be afforded without violating the due process rights of absent parties?

*Id*. at 407.

In the present case, Mr. Neville reported that he can utilize the north/south 15-foot alley despite the presence of the utility pole, which he can readily avoid while traveling that roadway. Thus, the owner of the utility pole's rights and interests were unaffected by the decision rendered herein, and no redress was being sought against such owner.

As to the Worthings, the ruling in question likewise had no impact on their property rights to any extent and no relief was accorded against them. While the Worthings have constructed a fence on the 12-foot alley that borders the parties' property to the north, that fence can remain intact since Mr. Neville will not and actually cannot utilize the alley on the Worthings' land to travel to his garage. The equity court ruled that the 12-foot easement needed by Mr. Neville to access his garage was one traversing Lot 4. Hence, neither the Worthings nor the New Enterprise Electric Co-Operative, Inc. was an indispensable party in this lawsuit. We reject Ms. Lynn's first allegation of error.

Ms. Lynn's second position is that the trial court erred "by changing the location of the 12-foot easement, by creating a second 12-foot easement." Appellant's brief at 21. In the present case, the equity court ruled that Mr. Neville enjoyed the right to use a 12-foot easement visibly traversing the northern portion of Ms. Lynn's land. It concluded that this "right of Mr. John W. Neville, Jr. to utilize the alleyway as described is one that is granted through **the express language of the deed description**[.]" Trial Court Opinion, 9/29/15, at 9 (emphasis added).

It is settled that "the same rules of construction that apply to contracts are applicable in the construction of [express] easements." *McNaughton Properties, LP v. Barr*, 981 A.2d 222, 227 (Pa.Super. 2009). Thus, "when "ascertaining the scope of an easement, the intention of the parties must be advanced." *Id*. The parties' intention "is determined by a fair interpretation and construction of the grant and may be shown by the words employed construed with reference to the attending circumstances known to the parties at the time the grant was made." *Id*. If "an easement is ambiguous, the grantee shall have 'reasonable and necessary use' of the right of way within the purpose of the easement and the intentions of the original parties to the grant." *Id*. (citation omitted).

We cannot agree with Ms. Lynn's claim that the equity court created a second 12-foot easement out of whole cloth. The existence of both a 12-foot alley north of the real estate owned by the parties as well as a 12-foot

easement traversing the northern portion of Lot 4 is supported both by the wording of Ms. Lynn's own deed and the attendant circumstances. Lot 4 is described generally as being bounded on "the North by a 12-foot alley," which is the alley north of Lot 4 on the Worthings' land. Exhibit E, Deed to Ms. Lynn, 9/11/00. However, the specific metes and bounds description of Lot 4 is as follow:

> BEGINNING at a point;
>
> thence S 61° E 60 feet to the southeast corner of Lot (5);
>
> thence N 27- 1/2 °'E 176 feet, **less a 12 -foot alley or to a 12 −foot alley**;
>
> thence N 60 -1/4° N 60 feet to a 15 -foot alley and East corner of lands formerly of N.H, Horton, but does not include the 15 − foot alley;
>
> thence by said 15 -foot alley, S 27 -1/2° H approximately 177 feet to the Township Road leading through the Village of Wells Tannery, the place of beginning.
> . . . .
>
> The 15 -foot alley on the west side and the 12 -foot alley on the north side are open and public alleys for use of all concerned.

*Id*. (emphasis added).

The emphasized language containing the metes and bounds description of Lot 4 clearly states that the northern boundary of Lot 4 is the 12-foot alley on the Worthings' land **minus** another 12-foot easement on the northern part of Lot 4. Thus, the deed itself indicates that there are two 12-foot easements. The equity court concluded that this language in the

- 13 -

deed established that Ms. Lynn's Lot was "**both** bounded by a 12 foot alley and was subject to a 12 foot alley." Trial Court Opinion, 9/29/15, at 8 (emphasis in original). This conclusion is fully supported by the wording of the deed in question.

The equity court additionally examined the attendant circumstances to support its decision that Mr. Neville had an express easement over the northern portion of Lot 4. Specifically, the court "acknowledged that [Mr. Neville's] predecessor in title had the right to traverse the 15 foot alley and to then bear [east] and drive over the 12 foot alley **over [Ms. Lynn's] property** to access a garage" on Mr. Neville's land. *Id*. (emphasis in original).

The equity court also relied upon a Pennsylvania Department of Transportation drawing of the area from 1968, which showed "both the 15 foot alley plus a natural curve and bend of a 12 foot alley which traverses" Ms. Lynn's Lot 4. *Id*.; Exhibit Q. Finally, the court observed that, when Ms. Lynn "acquired the property, the 15 foot alley was of obvious record on the ground, as well as the 12 foot alley to the rear which traversed over her property." *Id*.

Thus, the decision of the equity court rested upon the language in the deed to Ms. Lynn and the attendant circumstances. It therefore did not commit an error of law in finding an express easement existed over Ms. Lynn's land. The decree is supported by the evidence and not demonstrably

- 14 -

capricious. Hence, we reject the position that the equity court erred in concluding that there was an express 12-foot easement crossing over Lot 4.

Ms. Lynn's third contention is that the equity court erred because its decision was based upon the theory that Mr. Neville had a "prescriptive easement, a theory not pled in the complaint or advanced at trial." Appellant's brief at 26. While the equity court herein did mention that the 12-foot easement used to access Mr. Neville's garage had been in use since 1946, it did not premise its finding that Mr. Neville had an easement upon the existence of a prescriptive easement. The equity court's opinion, as quoted above, articulates that it found the existence of an express easement traversing Ms. Lynn's Lot 4, due to the language in the metes and bounds description of Lot 4 and other circumstances. Hence, we discount Ms. Lynn's theory that the equity court found that Mr. Neville's easement was a prescriptive easement.

In her fourth issue, Ms. Lynn suggests that the equity court erroneously denied her request for a new trial so that she could address the equity court's novel, *sua sponte* conclusion that a 12-foot easement was located on her property.

> Our review of the trial court's denial of a new trial is limited to determining whether the trial court acted capriciously, abused its discretion, or committed an error of law that controlled the outcome of the case. In making this determination, we must consider whether, viewing the evidence in the light most favorable to the verdict winner, a new trial would produce a different verdict. Consequently, if there is any

support in the record for the trial court's decision to deny a new trial, that decision must be affirmed.

***Grossi v. Travelers Pers. Ins. Co.***, 79 A.3d 1141, 1148 (Pa.Super. 2013).

We cannot agree that the equity court's ruling herein was either novel or raised *sua sponte*. Mr. Neville's position from the inception of these proceedings was that he had a 12-foot easement **over** Lot 4 to access his garage. The easement that existed on Ms. Lynn's land and proceeded to Mr. Neville's garage traversed the northern portion of Ms. Lynn's property and it was **not** the 12-foot alley located on the Worthings' land. Indeed, Mr. Neville could not access his garage from the 12-foot alley, and it was for that reason that the Worthings were not joined as parties.

Ms. Lynn cannot claim that she was surprised by the equity court's ruling since the existence of a 12-foot easement over her property was at issue from the onset of these proceedings. We therefore conclude that the equity court did not act capriciously, abuse its discretion, or commit an error of law in denying her a new trial on this ground.

Ms. Lynn's final position is that the court erred in partially denying her post-trial request to supplement the record. The equity court allowed certain of her supplemental exhibits to be admitted so that it could determine the parameters of the 12-foot easement, but refused to consider deeds to lots located to the east of Mr. Neville's land. "[I]n order for a trial court's ruling on an evidentiary matter to constitute reversible error

requiring the grant of a new trial, the ruling must be both legally erroneous and harmful to the complaining party." ***Parr v. Ford Motor Co.***, 109 A.3d 682, 697 (Pa.Super. 2014).

In this portion of her brief, Ms. Lynn provides no authority to support a conclusion that it was legally erroneous for the trial court to refuse to consider evidence not presented during the course of trial and that the opposing party had no opportunity to refute or otherwise challenge. Additionally, Ms. Lynn fails to articulate in her brief how the ruling was harmful to her. The equity court's finding regarding the 12-foot easement crossing Lot 4 was premised upon language in Ms. Lynn's deed, the use of the easement over the years, and the fact that the easement was visible on her property. Deeds pertaining to lots to the east of Mr. Neville's property have no bearing on any of these factors, and Ms. Lynn does not articulate in her appellate brief how these deeds could have affected the verdict in question.

Judgment affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/25/2017

- 17 -