J-A14008-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JEFFERSON K. COLLIER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LARRY E. WILLIAMS AND SUZETTE I. | : | |
| WILLIAMS, HIS WIFE | : | |
| | : | No. 1106 WDA 2020 |
| Appellants | : | |

Appeal from the Judgment Entered December 30, 2020
In the Court of Common Pleas of Fayette County Civil Division at No(s):
NO. 99 OF 2020 GD

BEFORE:  MURRAY, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: JULY 9, 2021**

Larry E. Williams and Suzette I. Williams (Appellants) appeal from the judgment entered in favor of Jefferson K. Collier (Collier).[1]  We affirm.

The parties' dispute concerns an easement on Appellants' property.  The trial court explained:

> [ ] Collier is the owner of a tract of land in Fayette County.  His property is located off of Quebec Road and is identified as Tax Parcel # 42-25-0007.  The deed to his property is recorded in Record Book 2986 at 1996.
>
> [Appellants] own property adjacent to [ ] Collier's tract.  Their property is located off of Skyline Drive and is identified as Tax

---

[1] In the caption of their brief, Appellants purport to appeal from the order of September 21, 2020.  However, an appeal properly lies from the entry of judgment.  ***Jackson v. Kassab***, 812 A.2d 1233, n.1 (Pa. Super. 2002).  We have corrected the caption accordingly.

Parcel # 42-24-0002-01. The deed to their property is recorded in Record Book 923 at 224. [Appellants'] property is subject to an easement that allows [ ] Collier to access his property. The easement is recorded in record books and predates both [Collier's] and [Appellants'] ownership of their respective tracts. Around November of 2019, [Appellants] blocked access to the easement. In response, [ ] Collier filed a Complaint in Civil Action against [Appellants] on January 14, 2020. [ ] Collier then filed a Motion for Injunctive Relief on January 17, 2020, asking this [c]ourt to order that [Appellants] remove the barricades from the easement.

At issue is the location of the easement.

The easement is set forth in [Appellants'] chain of title, however it is not described specifically by metes and bounds. There is currently a strip of cleared forest through [Appellants'] property that has been identified as a "cart path" or as an "Earth/Stone Road." This cart path has been used by [Collier] and his predecessors for over 50 years, according to testimony elicited by [Collier] and his witnesses at the Hearings.

[Appellants] argue that the location of the easement as described in the deeds is not the cart path, but an alternate location along the border of their property. [Appellants] cited a survey conducted by Garbart Engineering dated June 8, 1983, which shows the easement located along the boundary of [Appellants'] property. [Appellants] also alleged in their New Matter that prior to 1997, there were no pathways or cartways through [their] tract of land.

[Collier], on the other hand, cited a survey conducted by Terald McMillan, which shows the cart path going through [Appellants'] property. At the Hearing on the matter, [Collier] also offered into evidence an aerial photograph from 1959, which shows a cleared path through [Appellants'] property.

The latest deed in the chain of title for [Appellants] is from Larry and Suzette Williams to themselves in 1992, following their marriage. Specifically, that deed conveys property to [Appellants]:

> Excepting and Reserving, a road as an outlet to the property formerly owned by Robert Rankin, presently believed to be owned by J.D. Kerfoot, which lies to the

> East of land of the [sic] Charles Roy Addis, his heirs and assigns forever as an outlet to any of the other land the Grantor owns adjacent to the land first described and the land heretofore referred to as the land of J.D. Kerfoot immediately to the East thereof.

Record Book 923, Page 224. As is plainly visible from the Excepting and Reserving Clause, the easement is not described specifically by metes and bounds.

After a Hearing on this matter, [the trial c]ourt issued an Order on September 21, 2020 finding in favor of [Collier] and ordering [Appellants] to remove the blockades from the easement. [The trial c]ourt also issued Findings of Fact on the same date.

On October 19, 2020, [Appellants] filed a timely appeal of [the trial c]ourt's Order. [It] directed [Appellants] to file a Statement of Issues on Appeal, which [Appellants] complied with on November 3, 2020.

Trial Court Opinion, 1/8/21, at 1-3.[2]

Appellants present three issues for our review:

I.    WHETHER THE TRIAL COURT ERRED IN GRANTING AN INJUNCTION PERMITTING [COLLIER] TO HAVE A RIGHT OF WAY THROUGH APPELLANTS' REAL ESTATE WHEN THE DEED IN THE VARIOUS CHAINS OF TITLE SPECIFY A LOCATION ALONG THE BOUNDARY LINE BETWEEN APPELLANTS' AND [COLLIER'S] 18 ACRE TRACT SINCE 1925?

II.   WHETHER THE TRIAL COURT ERRED IN GRANTING A PRESCRIPTIVE EASEMENT THROUGH APPELLANTS' FORESTED REAL ESTATE IN VIOLATION OF THE PENNSYLVANIA UNENCLOSED WOODLANADS ACT?

III.  IN THE ALTERNATIVE, WHETHER THE TRIAL COURT ERRED IN PERMITTING [COLLIER] TO UNILATERALLY CHANGE THE

_____

[2] In response to this Court's rule to show cause, Appellants praeciped the trial court and judgment was entered on December 30, 2020.

LOCATION OF THE RIGHT OF WAY WHEN APPELLANTS DID NOT CONSENT TO ANY CHANGE IN ITS LOCATION?

Appellants' Brief at 4.

We begin by recognizing:

Our appellate role in cases arising from non-jury [matters] is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue . . . concerns a question of law, our scope of review is plenary.

*Metro Real Estate Investment, LLC v. Bembry*, 207 A.3d 336, 339 (Pa. Super. 2019) (citations omitted). Further, the "credibility of witnesses is an issue to be determined by the trier of fact. On appeal, this Court will not revisit the trial court's determinations regarding the credibility of the parties." *Garwood v. Ameriprise Financial, Inc.*, 240 A.3d 945, 948 (Pa. Super. 2020) (citations omitted).

In their first issue, Appellants allege the trial court erred in "permitting [Collier] to have a right of way through Appellants' real estate when the deeds in the chain of title specify a location along the boundary line between Appellants and [Collier's] 18 acre tract since 1925." Appellants' Brief at 15; *see also id.* at 16-24. We disagree.

The trial court accurately characterized the parties' dispute as concerning "the location of a recorded easement that runs through

- 4 -

[Appellants'] property." Trial Court Opinion, 1/8/21, at 4. The court determined the easement was "not described by metes and bounds in the relevant deeds," and concluded "the easement is an express easement." *Id.* We have explained:

> When reviewing an express easement, the language of the agreement, unless ambiguous, controls. The terms of the instrument conveying the interest are interpreted by applying general principles of contract law. Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract. Where a term is ambiguous and susceptible of more than one reasonable interpretation, however, the court is free to receive extrinsic, *i.e.*, "parol evidence," to resolve the ambiguity. A contract will be found ambiguous: if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction. Ambiguity within a contract may be latent or patent. A patent ambiguity appears on the face of the contract and is a result of defective or obscure language. Although Pennsylvania law provides that "parol evidence" may not be introduced unless the language of the written agreement is ambiguous on its face, extrinsic facts and circumstances may be proved to show that language apparently clear and unambiguous on its face is, in fact, latently ambiguous.

*Baney v. Eoute*, 784 A.2d 132, 136 (Pa. Super. 2001) (citations and some quotation marks omitted).

Here, the record supports the trial court's determination concerning the location of the express easement. The court detailed its rationale, which we adopt below:

[Appellants'] Issue is that [the trial c]ourt erred in finding that the easement went through [Appellants'] property, despite the language commencing in the July 1925 deed, which is recorded at Deed Book 468, page 44, and in deeds thereafter. To understand this issue, one must look at the history of [Appellants'] and [Collier's] properties.

In 1892, a deed was recorded from Walter Laughead to Robert Rankin at Deed Book 111, page 184. That deed conveyed a piece of land containing "401 acres and allowances or 425 acres strict" to Robert Rankin. This is the last common tract in both [Collier's] and [Appellants'] chain of title.

In 1916, Robert Rankin conveyed 120.42 acres to Sarah Jane Addis, recorded at Deed Book 350, page 244. The conveyance includes [Appellants'] present-day property. The deed also contains a clause "[e]xcepting and [r]eserving a road as an outlet to the property now owned by Robert Rankin that lies due east and adjacent to the above[-]described tract of land." The language in the deeds in [Appellants'] chain of title echo the same excepting clause, although additional language is eventually added to the clause until its present form:

> Excepting and Reserving, a road as an outlet to the property formerly owned by Robert Rankin, presently believed to be owned by J.D. Kerfoot, which lies to the East of lands of the [sic] Charles Roy Addis, which right of way is excepted and reserved in the chain of title to the above described property, which said right of way is likewise, excepted and reserved to the said Charles Roy Addis, his heirs and assigns forever as an outlet to any of the other land the Grantor owns adjacent to the land first described and the land heretofore referred to as the land of J.D. Kerfoot immediately to the East thereof.

Record Book 923, Page 224.

In [Collier's] chain of title, the "401 acres and allowances or 425 acres strict" that was conveyed to Robert Rankin was next conveyed to J.R. Wood in 1919, recorded at Deed Book 378, page 393. That conveyance excepts out of the land approximately 384 acres that were conveyed to other grantees, including the 120.42 acres conveyed to Sarah Jane Addis. (In effect, the deed

conveyed 17 acres and allowances or 41 acres strict to James R. Wood.)

That property was then conveyed in 1924 by James R. Wood to John D. Kerfoot, recorded at Deed Book 449, page 56. In 1968, the property was conveyed by Pearl Kerfoot, the widow of John Kerfoot, to Frances and Thomas Collier, recorded at Deed Book 1056, page 816. It was then conveyed from Frances Collier, the widow of Thomas Collier, to Frances Collier and Jefferson Collier in 1996, recorded at Deed Book 1732, page 333. Finally, it was conveyed to Jefferson Collier, Plaintiff, in 2006, recorded at Deed Book 2986, page 1996.

In [Collier's] chain of title, none of the deeds describe any specific right-of-way or easement, either to access the property or subservient to the property.

In [Appellants'] chain of title, the excepting clauses never describe the easement by any metes and bounds description.

[Appellants] now argue that [the trial c]ourt erred in failing to adopt an alternative version of an easement that began in 1925 at Deed Book 468, page 44. This deed conveyed 20 acres from Sarah Jane Addis to Ray E. Addis. It also contained the following language:

> There is also conveyed by this deed a right of way for the passage of persons and vehicles for the point use of first and second parties hereto, and the present and future owners of the aforesaid tract now owned by J.D. Kerfoot, extending from the aforesaid Summit road to the said J.D. Kerfoot tract, said right of way beginning at a point approximately 86 feet North of the second point designated in this deed and extending on a course approximately North 83° East, partly across land of first parties not conveyed by this deed and partly along or adjacent to the course hereinabove mentioned, North 83° 014' East 2593.35 feet as the same was reserved in deed of Robert Rankin to Sarah Jane Addis, hereinafter recited; and second party by acceptance of this deed agrees to the use of said right of way, as aforesaid, in so far as the same may extend over or across the land hereby conveyed.

This 20 acres of land was conveyed several more times until in 1995, when it was conveyed as 18.704 acres to Jefferson Collier, Plaintiff, recorded at Deed Book 1619, page 297. In [Appellants'] view, this is the same easement that was excepted and reserved throughout their chain of title. [Appellants'] argument, however, is illogical.

The clause in the chain of title beginning at Deed Book 468, page 44 is not described in the same manner as the one in [Appellants'] chain of title—the descriptions are entirely different. The easement reserved in [Appellants'] deed is not described by metes and bounds, but is described as "a road as an outlet to the property formerly owned by Robert Rankin, presently believed to be owned by J.D. Kerfoot." The fact that there are two separate descriptions lends weight to the argument that the two chains of title are describing two separate rights-of-way. In other words, just because there is a right-of-way described in the chain of title beginning at Deed Book 468, page 44 does not mean that this is the same right-of-way excepted throughout [Appellants'] chain of title, which is basically [Appellants'] argument.

Further, if the right-of-way beginning in Deed Book 468, page 44 was the same as the one that is in [Appellants'] chain of title, then the deeds in [Appellants'] chain of title would have removed any reference to a right-of-way, because it would no longer be on that property. Here, the deeds in [Appellants'] chain of title do not omit the reference to the right-of-way after the 1925 property conveyance. In fact, the references to the right-of-way in [Appellants'] chain of title even evolve to add additional language in 1955 and again in 1958. *See*, Abstract of [Appellants'] Chain of Title, [Appellants'] Exhibit 13. If the right-of-way ceased to exist on [Appellants'] property after 1925, then the references in the deeds in [Appellants'] chain of title should have ceased to exist as well.

The issue before the [trial c]ourt had nothing to do with the right-of-way [from 1925] described in the chain of title starting at Deed Book 468, page 44. Rather, the issue was the right-of-way excepted throughout [Appellants'] chain of title. That right-of-way in [Appellants'] chain of title is merely described as "a road" that leads to the property once owned by J.D. Kerfoot. The property at issue before this Court, which is now owned by [ ] Collier, was once owned by J.D. Kerfoot. After hearing the

evidence in this case, this Court found that the cart path had been used by [Collier] and his predecessors for at least over 50 years. This is not to say that the use of the cart path for such a period created a prescriptive easement, but rather it was evidence that the cart path is also the "road" excepted as an easement throughout [Appellants'] chain of title.

Trial Court Opinion, 1/8/21, at 6-9.

Appellants do not dispute the ambiguity in their deed or the necessity of parol evidence. **See** Appellants' Brief at 16-24. Rather, they reargue the merits of their case. **See id.** at 24 (asserting "deeds are the most important piece of evidence in this matter" and concluding Collier "failed to sustain his burden of proof and the Trial Court erred.").[3] As we indicated above,

our scope of review . . . is very limited. We will respect the trial court's findings with regard to credibility and weight of the evidence unless it can be shown that the lower court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence.

**Hollock v. Erie Ins. Exch.**, 842 A.2d 409, 417 (Pa. Super. 2004) (*en banc*). Here, the court made its decision after "hearing testimony, reviewing the evidence presented in this case, and taking a view of the parties' respective properties." Findings of Fact, 9/21/20, at unnumbered page 1. We discern no error.

---

[3] In contrast, Collier argues "[t]he best evidence in this matter was provided by the expert testimony of Terry McMillen, Jr. of McMillen Engineering, Inc., establishing the survey of the roadway as it exists and is shown on the aerial depiction clearly showing the roadway as far back as the 1950's." Collier's Brief at 12.

In their second issue, Appellants contend the trial court erred "in granting a prescriptive easement through Appellants' forested real estate in violation of the Pennsylvania Unenclosed Woodlands Act." Appellants' Brief at 24; *see id.* at 24-26. This claim is baseless.

The easement at issue is an **express** easement, not a prescriptive easement. Trial Court Opinion, 1/8/21, at 4-5; *see also* Collier's Brief at 19 (arguing the court's decision does not violate the Unenclosed Woodlands Act "because the subject right of way is an express easement"). The court explained:

> . . . the easement **is an express easement, rather than a prescriptive easement.** This is important to several issues in this appeal. An express easement is "voluntarily created by a written instrument to serve a specified purpose," while a prescriptive easement is "created from an open, adverse, and continuous use over a statutory period." Black's Law Dictionary (11th ed. 2019). Express easements and prescriptive easements are subject to different legal standards. Several of [Appellants'] issues on appeal misconstrue the applicable law by implying that the easement at issue is prescriptive.
>
> * * *
>
> . . . [Appellants'] . . . irrelevantly invoke the Pennsylvania Unenclosed Woodlands Act (68 P.S. § 411), which applies to **prescriptive easements** that run through woodlands. *See*, *e.g.*, *Kuhstoss v. Steele*, 234 A.3d 789, 795- 96 (Pa. Super. Ct. 2020) (the provisions of the Unenclosed Woodlands Act bar prescriptive easements through unenclosed woodlands). **The Unenclosed Woodlands Act does not apply to express easements**, which are created voluntarily between parties and run with the land.
>
> [Appellants] . . . imply that the easement at issue before the [trial c]ourt was a prescriptive easement. **If it were a prescriptive easement, those Issues may have been relevant, but it was**

- 10 -

**not a prescriptive easement—it was an express easement that was described through deeds in [Appellants'] chain of title.** As such, these Issues are without merit.

Trial Court Opinion, 1/8/21, at 4-5 (footnote omitted, emphases added).

Appellants do not reference evidence to support a finding that the easement was prescriptive, challenge the trial court's finding that the easement was express, or argue the Unenclosed Woodlands Act applies to express easements. **Kuhstoss**, **supra**. Appellants' second issue is meritless.

In their third and final claim, Appellants assert the trial court erred "in permitting [Collier] to unilaterally change the location of the right of way when Appellants did not consent to any change in its location." Appellants' Brief at 26.

The trial court explained the contextual background:

The original path to [ ] Collier's property went through [a third party's] property off of Summit Road and through [Appellants'] property to [ ] Collier's property. **See**, Proceedings at 381-387. [ ] Collier later purchased an 18-acre property that abuts the [third-party] Property and [Appellants'] Property to the south. After purchasing that property, [ ] Collier began going through his own 18-acre tract to access the easement at another point on [Appellants'] property, instead of going through the [third-party] Property.

Trial Court Opinion, 1/8/21, at 10.

The court found the change in Collier's access "less obtrusive to [Appellants] because it comprises less land." **Id.** at 11. The court also noted that Collier could no longer access the original access point because the third party property owners have "since put up a fence and relocated their house."

*Id.* The court acknowledged that under *McNaughton Properties, LP v. Barr*, 981 A.2d 222, 223 (Pa. Super. 2009), a trial court did not have authority to change the location of an express easement, but found *McNaughton* to be distinguishable. *Id.* at 10-11. The court stated "there is one key difference between *McNaughton* and th[is] case. In *McNaughton*, the original deed excepting the easements included a sketch of the easements, even though the easements were not described by metes and bounds. Here, the original exceptions that created the easement only described the easement as 'a road' leading to now what is Mr. Collier's property." *Id.* We agree.

In *McNaughton*, we held that "under existing Pennsylvania law, express easements must be construed according to contract interpretation principles, and thus we are without authority to modify the terms of an **unambiguous** express easement." *McNaughton*, 981 A.2d at 223 (emphasis added). As discussed above, the express easement in this case was **ambiguous**. Thus, *McNaughton* is distinguishable.

Moreover, Appellants cite no support for their contention that a change in an access point to an easement constitutes a relocation within the meaning of *McNaughton*. It is not our role to develop their argument for them or scour the record to find evidence to support an undeveloped claim. *See Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (*en banc*).

Lastly, Appellants do not dispute the trial court's finding that the change in the access point benefits them. **See** Appellants' Brief at 27. Instead, they argue Collier "sought relief from the Courts because [Appellants] blocked the alleged right of way. There is no difference between the adjoining property owner [] and the Appellants. If [Collier] wants to enforce his alleged right of way, he could go into [c]ourt just as he has in the instant matter." **Id.** This argument is disingenuous. Collier commenced this action because Appellants blocked an easement that had been in use for over 50 years. The third party owners erected a fence and relocated their home after Collier bought land and began using a difference point of access. No relief is due.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/9/2021